# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1040

KA 13-01079

PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

EZEIEKILE NAFI, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (BARBARA J. DAVIES OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR RESPONDENT.

---------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered May 29, 2013. The judgment convicted defendant, upon a jury verdict, of manslaughter in the first degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of manslaughter in the first degree (Penal Law §§ 20.00, 125.20 [1]) as a lesser included offense of murder in the second degree (§§ 20.00, 125.25 [1]), defendant contends that the verdict is against the weight of the evidence and that the evidence is legally insufficient to support the conviction because the evidence at trial was insufficient to establish either that he intended to cause the victim serious physical injury or that he aided and abetted the perpetrators who inflicted the fatal stab wounds. "Given defendant's failure to argue with particularity that the evidence was legally insufficient to prove that he acted with the requisite mens rea," we conclude that defendant's current challenge to the sufficiency of the evidence concerning his mens rea has not been preserved for our review (*People v Carncross*, 14 NY3d 319, 325; *see People v Vanderhorst*, 117 AD3d 1197, 1198, *lv denied* 24 NY3d 1089; *see generally People v Gray*, 86 NY2d 10, 19).

In any event, we conclude that defendant's challenges to the weight and sufficiency of the evidence are without merit. "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.20 [1]). Thus, in order for defendant to be found guilty of manslaughter in the first degree as an accomplice, the People had to establish that, "when [defendant] aided [those] whose acts resulted in the death

of a person, [he] did so with the intent to cause serious physical injury to the victim" (*People v Vasquez*, 179 Misc 2d 854, 866, *affd* 298 AD2d 230, *lv denied* 100 NY2d 543; *see People v Browne*, 307 AD2d 645, 645-646, *lv denied* 1 NY3d 539).

Addressing first the sufficiency of the evidence, we conclude that, "[v]iewing the evidence in the light most favorable to the People, and giving them the benefit of every reasonable inference, as we must" (*People v Bay*, 67 NY2d 787, 788), the evidence is legally sufficient to establish that defendant intended to cause serious physical injury to the victim (*see generally People v Bleakley*, 69 NY2d 490, 495). Although the evidence established that the stab wounds inflicted by defendant were not the fatal stab wounds, "[t]he evidence that defendant stabbed the victim multiple times is legally sufficient to establish that defendant intended to cause serious physical injury to the victim" (*People v Simpson*, 35 AD3d 1182, 1182, *lv denied* 8 NY3d 990; *see People v Rivera*, 23 NY3d 112, 124; *People v Collins*, 43 AD3d 1338, 1338, *lv denied* 9 NY3d 1005; *cf. People v Stevens*, 153 AD2d 768, 769, *affd* 76 NY2d 833).

Defendant further contends that, by acquitting him of intentional murder, the jury necessarily decided that he was not an accessory of the other participants and was thus liable for only his conduct and could not be guilty of manslaughter based on the actions of the other perpetrators. We reject that contention. "Accessorial liability requires only that defendant, acting with the mental culpability required for the commission of the crime, intentionally aid another in the conduct constituting the offense" (*People v Chapman*, 30 AD3d 1000, 1001, *lv denied* 7 NY3d 811 [internal quotation marks omitted]). Here, the evidence established that defendant "intended to cause serious physical injury to the victim and that death resulted" (*People v Lewis*, 300 AD2d 827, 828, *lv denied* 99 NY2d 630; *see People v Rutledge*, 70 AD3d 1368, 1369, *lv denied* 15 NY3d 777; *see also People v Monaco*, 14 NY2d 43, 47). The fact that the jury acquitted defendant of intentional murder establishes only that, when defendant aided those whose acts resulted in the victim's death, defendant did not do so with the intent to cause death.

For the same reasons, we conclude that the verdict is not against the weight of the evidence (*see Rutledge*, 70 AD3d at 1369; *Chapman*, 30 AD3d at 1001; *see generally Bleakley*, 69 NY2d at 495).

Contrary to defendant's further contention, his rights to due process and a fair trial, and his right of confrontation were not violated when Supreme Court allowed a prosecution witness to testify that defendant nodded in agreement to a statement made by a nontestifying codefendant. Defendant's nonverbal response was admissible as an adoptive admission (*see People v Campney*, 94 NY2d 307, 311-312; *see generally People v Lourido*, 70 NY2d 428, 433), and the court properly instructed the jury in accordance with *Lourido* that the codefendant's statements were being admitted solely to establish defendant's "reaction . . . to that statement . . . [and] not for the truth of the statement" made by the codefendant (*see Campney*, 94 NY2d

at 316-317).

We agree with the People that the court properly allowed the same prosecution witness to testify at trial that, when he observed police officers near the scene of the homicide, he went to the crime scene "looking for . . . [t]he body . . . To see if it was true . . . That they had killed somebody." Those statements were not offered for their truth but, rather, "[were] properly admitted to explain [the witness's] presence at the scene, and to avoid speculation by the jury" (*People v Baez*, 7 AD3d 633, 633; *see generally People v Tosca*, 98 NY2d 660, 661). Although defendant now contends that the court erred in failing to issue limiting instructions to the jury, that contention is not preserved for our review because "defendant failed to request that the court instruct the jury as to the proper use of that testimony" (*People v Wisdom*, 120 AD3d 724, 726, *lv denied* 24 NY3d 1048; *see People v Martinez*, 100 AD3d 537, 538, *affd* 22 NY3d 551; *People v Tucker*, 291 AD2d 663, 665, *lv denied* 98 NY2d 703). Moreover, "[a]ny error in the court's failure to sua sponte issue a limiting instruction was harmless. The evidence of the defendant's guilt was overwhelming and there was no significant probability that the defendant would have been acquitted had the court given a limiting instruction with respect to this evidence" (*Wisdom*, 120 AD3d at 726; *see generally People v Crimmins*, 36 NY2d 230, 242). Based on the foregoing, we further conclude that the admission of the testimony and "the absence of a limiting instruction did not deprive the defendant of a fair trial" (*Wisdom*, 120 AD3d at 726), and thus the court properly denied defendant's request for a mistrial based on the admission of that testimony (*see* CPL 280.10 [1]).

Contrary to defendant's further contention, the court properly denied defendant's request for a jury instruction on the affirmative defense of duress (*see* Penal Law § 40.00 [1]). The testimony and exhibits admitted at trial, "when . . . viewed in the light most favorable to defendant, did not create a reasonable view of the evidence supporting such a charge" (*People v Thompson*, 34 AD3d 325, 325, *lv denied* 8 NY3d 885). While there was evidence that one of the other perpetrators threatened to kill defendant if he told anyone about the homicide, "[p]ost-crime threats and force are irrelevant as a matter of law" (*People v Staffieri*, 251 AD2d 998, 998-999). To the extent that defendant contends that he had no choice but to participate because he was told to do so by a higher ranking member of the gang with which he was affiliated, we note that there was no testimony from any witness concerning what higher ranking gang members would do to lesser ranking members if their instructions were disobeyed. In any event, even assuming, arguendo, that such testimony had been presented, we conclude that the defense of duress would not be available because, by voluntarily joining a gang, defendant "intentionally or recklessly place[d] himself in a situation in which it [was] probable that he [would] be subjected to duress" by the higher ranking gang members (§ 40.00 [2]; *see People v Morson*, 42 AD3d 505, 506, *lv denied* 9 NY3d 924).

Finally, we reject defendant's contentions that the court abused its discretion in denying his request for youthful offender status and

that the sentence is unduly harsh and severe.  "The decision 'whether to grant or deny youthful offender status rests within the sound discretion of the court and depends upon all the attending facts and circumstances of the case' " (*People v Williams*, 204 AD2d 1002, 1002, *lv denied* 83 NY2d 973).  Given the particularly heinous nature of the crime perpetrated on the 16-year-old victim, there is "no basis to conclude that the court abused its discretion in refusing to grant defendant youthful offender status," and we decline to modify the sentence (*id.*).

Entered:  October 2, 2015                          Frances E. Cafarell
                                                     Clerk of the Court